## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **RYAN GREENE** | : | **CIVIL ACTION NO.** |
| *Plaintiff,* | : | |
| | : | |
| | : | |
| vs. | : | **JURY TRIAL DEMANDED** |
| | : | |
| | : | |
| | : | |
| | : | |
| **AMAZON.COM SERVICES LLC** | : | |
| | : | |
| *Defendants.* | : | **AUGUST 18, 2021** |

## COMPLAINT
## JURISDICTION AND VENUE

1.      This action arises under Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. § 2000e et seq., Conn. Gen. Stat. 46a-60, *et seq*. and Connecticut state law.

2.      The jurisdiction of this court is founded upon 28 U.S.C. §1331 (federal question) and the provisions of 28 U.S.C. §1343.

3.      Venue is proper in the District of Connecticut pursuant to 28 U.S.C. §1391(b) in that the claims arose in this district and Plaintiff resides in this district.

4.      Supplemental jurisdiction over Plaintiff's supplemental state law claims are invoked pursuant to 28 U.S.C. §1367 as the claims arise out of the same transaction and occurrences as Plaintiff's federal claims.

5.      Costs, expert witness fees and attorney's fees are sought pursuant to 42 U.S.C. §1988.

6.     Plaintiff filed a timely claim with the Connecticut Commission on Human Rights and Opportunities ("CHRO").

7.     Plaintiff filed a timely claim with the Equal Employment Opportunity Commission ("EEOC").

## **PLAINTIFF**

8.     The Plaintiff, Ryan Greene ("Plaintiff"), resides in 11 Tracy Drive Vernon, CT 06066.

## **DEFENDANT**

9.     The Defendant, Amazon.com Services LLC, ("Amazon" or "Defendant"), is located at 71 Horizon Drive, Bristol CT, 06010, where the activities and conduct occurred.

## **FACTUAL BACKGROUND**

10.     The Defendant employs more than fifteen (15) employees.

11.     Plaintiff is a Caucasian male.

12.     Plaintiff began working for Amazon as an Area Manager on May 18, 2015.

13.     Plaintiff was promoted to an Operation Manager in March 19, 2018.

14.     Plaintiff was promoted to a Senior Operations Manager in September 2019.

15.     In or about April, 2020, Plaintiff transferred to Amazon Logistics, or Amazon Shipping ("AMZL") (the name used to describe deliveries from Amazon that are delivered by Amazon's own logistical arrangements) as a Regional Senior leader owning the southern Connecticut region.

-2-

16.     In or about April, 2020, Plaintiff was a virtually located manager.

17.     As a virtually located manager, Plaintiff managed four Station Managers, seventy Area Managers and twelve hundred hourly associates.

18.     In or about April 2020, Plaintiff's four sites, that he was scheduled to manage, were delayed for opening and he was asked to cover DBL1, a station in northern Connecticut, located at 71 Horizon Drive, Bristol CT, 06010.

19.     Plaintiff was asked to cover DBL1 because the station was poor performing and because he was viewed as a top performer.

20.     Plaintiff was the Senior leader responsible for all metrics and development of the leaders at the Bristol CT station ("DBL1 or the "Bristol CT station").

21.     The Bristol CT Operation Manager, a direct report, was Vanessa Ware ("Ware"), Black female, mid thirties.

22.     Ware was one of four Operation Managers reporting directly to Plaintiff each manager in different locations. Ware was the Bristol site manager.

23.     On or about April 30, 2020, Ware and Plaintiff discussed during a monthly one-on-one meeting, which he had, as standard practice with his reports, her individual career goals. Further, as part of his usual process, Ware and Plaintiff created action plans in furtherance of her career goals, discussed key metrics and what Plaintiff could do to help her.

24.     The manager that preceded Plaintiff, Chris Baran (Caucasian), had not done a monthly one-on-one with Ware in over a year, which Plaintiff confirmed in the Amazon online portal, Ingenii, which tracks these meetings.

25.     During the one-on-one session, Plaintiff asked Ware for upward feedback and Ware told him that she was nervous to work with him because he didn't promote her in a previous position at his last site, an Amazon Warehouse ("BDL2"). (Plaintiff and Ware had worked together in the previous location, she was the Area Manager and Plaintiff was the Senior Operations Manager. They worked together there for approximately three years, from 2016 to 2019, but she did not report to him until 2018.) That was the reason she had transferred out of the building and to AMZL, DBL1, a different site and no longer reported to Plaintiff, she explained to the Plaintiff in 2019.

26.     Prior to Ware's transferring out of BDL2 to DBL1, a previous Sr. Operation Manager and Plaintiff concurred that Ware's performance metrics needed improvement, generally.

27.     During the one-on-one session, on or about April 30, 2020, Plaintiff explained that he would help her reach her goals and give her real-time feedback to help her.

28.     On or about April 30, 2020, during the same meeting with Ware, Plaintiff discussed his passion with diversity and inclusion and uncovered that she was passionate about this as well.

29.     Further, at the April 30th meeting, Plaintiff asked Ware if she would like to help him drive affinity groups and she agreed that she would like to help drive BEN, our black employee network affinity group.

30.     At the April 30th meeting, Plaintiff also explained that he would discuss a plan on how to drive BEN with HR and he would get back to her about her assisting him in driving BEN. In the April 30th meeting, Ware was pleased with that plan regarding BEN, and expressed that she was happy to have a manager giving her direct feedback.

-4-

31.     As a follow up to his commitment to Ware, made during the April 30th meeting, in or about May 2020, Plaintiff scheduled a meeting with Senior HR manager Allie Voss ("Voss"), Caucasian female, mid thirties, to discuss his passion and interest in Inclusion and Diversity.

32.     In the May 2020 meeting, Plaintiff and Voss discussed that he was a Bar Raiser, only 1% of Amazonians are, largely due to his passion for Inclusion and Diversity.

33.     Further, in the May 2020 meeting, Plaintiff and Voss also discussed that he owned rolling out four affinity groups at his past site, BDL2, including BEN our black employee network affinity group.

34.     In the May 2020 meeting, Plaintiff and Voss agreed that when AMZL launches affinity groups he would be Voss's operation partner to help drive and sustain the affinity groups.

35.     Subsequent to the May 2020 meeting with Voss, Plaintiff emailed the information about the BEN rollout to Ware along with a video from the corporate BEN chapter.

36.     On or about May 14, 2020, Ware replied back to Plaintiff with her thanks, that she enjoyed the video, and that she is excited to launch BEN at her station.

37. On or about June 8, 2020, Plaintiff received a call from Voss, and was told that he was being suspended due to a complaint from a direct report.

38. In the June 8, 2020 call, Plaintiff was not given any details and was advised that due to the size of HR, a private investigator would call him with details and ask him questions.

39. In the June 8, 2020 call, Plaintiff was told to not communicate with anyone on his team.

40. On or about June 9, 2020, Cochran, (female), whom Plaintiff was told was an private investigator called Plaintiff. She told him that she would be leading the investigation.

41. On or about June 9, 2020, in the call, Cochran told Plaintiff that she has only been with Amazon for three weeks and would also need to look at policies before making a recommendation to Amazon HR.

42. On or about June 9, 2020, in the call, Cochran explained that after the investigation she would email Plaintiff and HR would contact him.

43. During the half an hour call, on or about June 9, 2020, with Cochran, Cochran told Plaintiff that Ware alleged that during his second one-on-one meeting with Ware, which Ware said was on or about June 4, 2020, or June 5, 2020, but that Ware could not remember the date or time, Plaintiff told Ware that she "was sweet and kind, like Aunt Jemima."

44. Plaintiff explained to the investigator that he absolutely did not say that.

45. In the meeting, in which the alleged comments occurred, Ware and the Plaintiff were both six feet apart due to social distancing guidelines and were wearing face masks.

46. Plaintiff explained to Cochran that he said to Ware that her managers loved her, they thought she had good qualities, however, her team also reported that she did not hold them accountable, and Plaintiff gave her specific details where she gave direction and her team did not follow it. Plaintiff typed contemporaneous notes into the ingenie system that recounted the meeting in substance without any reference or intimation that he had said Ware was "sweet and kind, like Aunt Jemima."

47. Plaintiff shared with Cochran that Ware had stated that she appreciated the direct feedback that she received at the second meeting, and that she needed to work on giving direct feedback to her direct reports and having them follow it.

-6-

48. On or about June 9, 2020, in the call with Plaintiff, Cochran told Plaintiff that there was a second complaint by Ware. The second complaint was that during a one-on-one, Plaintiff had advised Ware that there was a new manager, Mario (Spanish, male, thirty), starting, who would be taking her spot in Bristol, as she transitioned to her new station in Wallingford, and that Plaintiff and she should do their best to make sure the Bristol station is running as smoothly as possible. Ware had been scheduled to transfer to Wallingford, a region Plaintiff did not manage, in April, but because of Covid, the transfer had been delayed to August 2020. Ware alleged that Plaintiff's comment that they wanted the hand off to go smoothly made it seem like she was a servant.

49. Plaintiff's instruction that they wanted a smooth hand-off was standard practice. Plaintiff explained to the investigator that Ware and he had discussed the areas that need to be prepared, this included many areas of opportunity in regards to quality, bridging, social distancing, and that we have to improve and ensure the station would be efficient with a new manager.

50. On or about June 9, 2020, in the call, Plaintiff explained to the investigator, Cochran, that Plaintiff had asked her what support she needed, and that he conducted one-on-ones with every one of his and Ware's direct managers (eight) to give feedback and help create action plans to help improve the station. (Linda White, forty, Black female; Edmund Grant, thirty, Caucasian, male; Ware, Black, mid thirties, female; Reggie Antonie, Black male, mid twenties; Bianca Cruz, Caucasian, female, mid thirties; Marissa Trinkley, female, Caucasian, mid twenties; Nick C, male, mid twenties; Melissa B, Caucasian, female mid twenties. Jared Prims, Caucasian, male early thirties).

-7-

51. On or about June 9, 2020, in the call, Plaintiff explained to the investigator that he was given positive feedback from Ware and her team, as they hadn't had a one-on-one before from other managers and found them to be useful.

52. On or about June 9, 2020, in the call, Plaintiff explained that the conversation with Ware was constructive and that they had agreed on actions, manager moves, and direction together.

53. On or about June 9, 2020, in the call, Plaintiff explained to the investigator that he was passionate about inclusion and diversity, that he had previously rolled out affinity groups from his past site (BDL2) and would never call anyone Aunt Jemima and that he had never used any racial slurs or negative racial connotations in his life or previous work situations.

54. Plaintiff gave the investigator the name of another Black female, forty, Linda White ("White"), a female manager that directly reported to him, whom he mentored (as part of a formal internal program), and explained that he and Ms. White partnered and drove together the Black Women Leaders of Amazon (BWLA). He gave the name to the investigator to confirm and affirm that he would not use that kind of language based on that she knew him in his role as a sensitive white male to the role of black females in Amazon's ecosystem.

55. Ms. White related to Plaintiff that she was never called by the investigator. Ms. White called him multiple times during the investigation, asking when he would be back.

56. On or about June 9, 2020, as part of his input into the investigation, Plaintiff explained that Ware told him, during the April 30th one-on-one that she was "nervous" to work with him, because he had not promoted her, and that that was the reason she had transferred out of

our previous site (BDL2). He was critical of her performance in the previous relationship and she had transferred out to get away from him and she was quite concerned that her performance would not satisfy him again.

57. On or about June 9, 2020, Plaintiff told the investigator that Plaintiff was documenting Ware's performance and opportunities to help track progress and glide path to their goals, and that this was something that Ware was aware was being done. Ware, it was clear to Plaintiff, was concerned about being documented (being documented is a coaching approach which indicates need for improvement).

58. Plaintiff explained that himself and Sahni Abhishek (Indian), Ware's previous Senior Operational Manager, had a conversation in 2019, with her on her performance and what she could do to improve to reach her goals and eventually be promoted.

59. Ware had transferred one month after that conversation.

60. Plaintiff also explained to the investigator that his one-on-ones were documented and occurred on April 30 and June 2nd, not June 4, or June 5. (The investigator told Plaintiff that Ware was unsure of the dates of the one-on-one in which the alleged acts occurred but thought it was on either June 4 or June 5).

61. On June 26, 2020, Plaintiff was called by his direct manager, Jean Barberi ("Barberi") (his manager since March 2020, whom he had never met in person) (Asian) and Voss and was terminated.

62. Plaintiff was never contacted by the investigator when the investigation was complete so he could address any issues that may have arisen or were of concern in order to provide

further information or clarification, as he was stated would happen as part of the investigative procedure.

63. The investigation was shoddy, incomplete, and reflected implicit bias against the Plaintiff, including a single thirty-minute call with the Plaintiff at the beginning of the three-week investigation.

64. Neither Plaintiff's manager Barberi nor Voss asked Plaintiff any questions on what happened during this termination call, nor was he contacted at all by them during the investigation.

65. Plaintiff believes that Amazon discriminatorily disciplined him as a Caucasian male, in favor of a story with false allegations by a Black female, who was dissatisfied with not being promoted and had concerns about having her current performance documented as per policy.

66. The alleged comments happened during closed door one-on-ones without any witnesses.

67. Plaintiff didn't say the comment alleged and the evidence shows that he was performing his responsibilities in accordance expected and accepted Amazon procedures.

68. Plaintiff has the correct dates of the one-on-ones documented.

69. The documentation was uploaded into a portal for recordkeeping and will support his position that he acted as was required of a manager in his position.

70. One-on-ones occurred during closed-door meetings with Ware and himself on April 30th and June 2nd though the meetings were videotaped (without audio).

71. Ware alleged the one-on-ones happened on June 4, 2020 or June 5, 2020, days plaintiff worked from home.

72. On both June 4, 2020 and June 5, 2020, Plaintiff has messages from Ware documented, where she states "awesome, thank you" to him as he was working from home and they communicated only over Amazon Chime.

73. On June 2, 2020, Plaintiff had sent Ware their one-on-one conversation as well as a list of past due action items and misses that she needed to improve.

74. Ware replied with an action plan.

75. On June 2, 2020, Ware messaged that she is so excited and sent a picture that she was chosen to help drive BEN, our black employee network.

76. This is after their second one-on-one referred to previously.

77. On June 3, 2020, Plaintiff sent another follow up email to Ware and asked for a response with her plan to address so he could give feedback upstream as to why they missed.

78. Ware replied with an action plan.

79. On June 4, 2020, Plaintiff again emailed Ware a list of open action items that were past due as well as a need for details as to what happened.

80. Ware replied back to the email and stated that it was a big miss and blamed this on Jared Prims (Area Manager, Caucasian, male early thirties), one of her staff.

81. On or about June 5, 2020, Ware had a problem with one of her Area Managers. Ware explained in an email message she sent him that the Area manager, Marissa Trinkley, female, Caucasian, mid twenties, Ware's direct report, was going to be taking a week off due to a conversation that Ware had had with her. Trinkley was upset about the conversation that Ware had had with her. Ware had taken Plaintiff's guidance given to her, on June 2, 2020, which was to hold her team accountable, but instead of properly holding

Trinkley accountable, as they had discussed, she had instead threatened Trinkley with termination over a medical issue.

82. Ware was worried about coverage and who would cover the shift and explained that she would just get an excuse if she asked another manager to cover.

83. Plaintiff asked Ware to let him know if she needed help with coverage to cover for Trinkley and to keep him updated.

84. Ware replied back "okay."

85. The claim, by Ware, of a racist comment, alleged against Plaintiff, came immediately after he held her accountable and her performance problem with Trinkley were at risk of being documented (a disciplinary step). The Defendant falsely and intentionally found the comments to be true against Plaintiff in the absence of any evidence, based in large part on a prior unrelated incident.

86. Plaintiff has all one-on-ones documented and messages saved.

87. Plaintiff therefore charges Amazon with unfairly and wrongfully terminating him.

88. The dates of the alleged comments were not correct, both parties were wearing face masks and were alone and behind closed doors, though video recorded.

89. Plaintiff has conducted hundreds of one-on-ones in his career with Amazon and has never previously been made aware of a subordinates complaint with regard to his coaching or his professionalism.

90. Amazon has requested the Plaintiff pay back $15,500 from a bonus (a relocation bonus requiring one year of employment post the bonus), as well as took away over $180,000 of Amazon stock that he was awarded and scheduled to vest soon after his termination.

91. Plaintiff has suffered severe and extreme emotional distress.

## COUNT ONE
### VIOLATION OF TITLE VII
### REVERSE DISCRIMINATION, HOSTILE WORK ENVIRONMENT,
### AND RETALIATION BASED ON RACE

1-93.   The Plaintiff hereby re-alleges and reincorporates paragraphs 1-93. as if more fully set forth herein.

92.    The Plaintiff, a Caucasian male, is the subject of reverse discrimination.

93.    The Plaintiff was qualified for his position.

94.    Plaintiff has been treated disparately, based upon his race, including, but not limited to the following:

(a).  Plaintiff was falsely accused of making a racist comment.

(b).  Plaintiff was falsely accused of making a demeaning comment by offering assistance to Ware in furtherance of ensuring the transfer of the Bristol location went smoothly.

(c).   Plaintiff was terminated on account of false accusations made against him.

(d).  Defendant took the allegations against him as being true, siding with a Black employee whose performance was being questioned at the very time of the allegations, and previous to the allegations.

95.    These discriminatory, adverse employment actions were taken because the Plaintiff was Caucasian and the complainant was Black.

96.    As such, Defendant's actions and conduct are a violation of Title VII.

97.    As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's

pleasures and activities.

98.    Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT TWO
### VIOLATION OF C.G.S. §46A-60b
### REVERSE DISCRIMINATION, HOSTILE WORK ENVIRONMENT
### AND RETALIATION BASED UPON RACE

1.-100. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-100, as if more fully set forth herein.

99.    Defendant's actions are a violation of C.G.S. §46a-60b.

100.    As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

101.     Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT THREE
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

1.-106. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-76, as if more fully set forth herein.

102.    Defendant intended to inflict emotional distress upon the Plaintiff or knew or reasonably should have known that emotional distress was a likely result of their conduct.

103.    As a result of the foregoing intentional infliction of emotional distress, the Plaintiff has suffered and will continue to suffer severe emotional distress.

104.    Plaintiff seeks damages as a result of the Defendant's unlawful conduct.

-14-

**<u>PRAYER FOR RELIEF</u>**

Wherefore the Plaintiff prays that this court award:

1. Money damages;

2. Payment of all outstanding grants of stock due and payable;

3. Costs;

4. Punitive damages, attorney fees, and expert witness fees;

5. Pre-judgment interest;

6. Trial by jury; and

7. Such other relief as the Court deems just, fair, and equitable.

THE PLAINTIFF,
RYAN GREENE

By:_____/s/_____
        Eugene Axelrod (ct00309)
        Axelrod & Associates, LLC
        *His Attorneys*
        8 Lunar Drive
        Woodbridge, CT 06525
        Tel: 203-389-6526
        Fax: 203-389-2656
        eaxelrod@axelrodlegal.com

-15-

-16-