## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| RYAN GREENE, | : |
| | : CIVIL ACTION NO.: |
| Plaintiff, | : 3:21-cv-01194-KAD |
| | : |
| v. | : |
| | : |
| AMAZON.COM SERVICES LLC, | : |
| | : November 4, 2021 |
| Defendant. | : |
| | : |
| | : |

### ANSWER TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM

Amazon.com Services LLC ("Amazon") by and through its attorneys, Morgan, Lewis &

Bockius LLP, hereby responds to the allegations in Plaintiff Ryan Greene's ("Plaintiff") Complaint

(the "Complaint") in the above-captioned matter as follows:

### JURISDICTION AND VENUE[1]

**COMPLAINT ¶ 1:** This action arises under Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. § 2000e et seq., Conn. Gen. Stat. 46a-60, *et seq.* and Connecticut state law.

**ANSWER:** In answering Paragraph 1 of Plaintiff's Complaint, Amazon admits only that

Plaintiff purports to bring the instant action pursuant to the statutes identified above, but denies

any violations of the same and denies that Plaintiff is entitled to any relief whatsoever.

**COMPLAINT ¶ 2:** The jurisdiction of this court is founded upon 28 U.S.C. §1331 (federal question) and the provisions of 28 U.S.C. §1343.

**ANSWER:** In answering Paragraph 2 of Plaintiff's Complaint, Amazon admits only that

the Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343(a)(4), and admits

that Plaintiff purports to bring the instant action pursuant to the statutes identified above.

---

[1] The headings set forth are for the purpose of reference to the corresponding headings in Plaintiff's Complaint and are not to be deemed an admission by Amazon.  To the extent any of the headings in Plaintiff's Complaint are deemed to assert allegations against Amazon, Amazon denies those allegations.

**COMPLAINT ¶ 3:** Venue is proper in the District of Connecticut pursuant to 28 U.S.C. §1391(b) in that the claims arose in this district and Plaintiff resides in this district.

    **ANSWER:** In answering Paragraph 3 of Plaintiff's Complaint, Amazon admits only that venue is proper in the District of Connecticut pursuant to 28 U.S.C. § 1391(b). By way of further response, Amazon states that it is without sufficient knowledge or information to form a belief as to Plaintiff's allegations about his current residence, and therefore denies the same and leaves Plaintiff to his proof.

**COMPLAINT ¶ 4:** Supplemental jurisdiction over Plaintiff's supplemental state law claims are invoked pursuant to 28 U.S.C. §1367 as the claims arise out of the same transaction and occurrences as Plaintiff's federal claims.

    **ANSWER:** In answering Paragraph 4 of Plaintiff's Complaint, Amazon admits that the Court has supplemental jurisdiction over Plaintiff's Connecticut state law claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343(a)(4).

**COMPLAINT ¶ 5:** Costs, expert witness fees and attorney's fees are sought pursuant to 42 U.S.C. §1988.

    **ANSWER:** In answering Paragraph 5 of Plaintiff's Complaint, Amazon admits that Plaintiff purports to seek costs, expert witness fees and attorney's fees pursuant to 42 U.S.C. § 1988, but denies that Plaintiff is entitled to such relief.

**COMPLAINT ¶ 6:** Plaintiff filed a timely claim with the Connecticut Commission on Human Rights and Opportunities ("CHRO").

    **ANSWER:** In answering Paragraph 6 of Plaintiff's Complaint, Amazon states that it is without sufficient knowledge or information to form a belief as to Plaintiff's allegations concerning the timing of his filing of a claim with the Connecticut Commission on Human Rights and Opportunities ("CHRO"), and therefore denies the same and leaves Plaintiff to his proof.

**COMPLAINT ¶ 7:** Plaintiff filed a timely claim with the Equal Employment Opportunity Commission ("EEOC").

**ANSWER:** In answering Paragraph 7 of Plaintiff's Complaint, Amazon states that it is without sufficient knowledge or information to form a belief as to Plaintiff's allegations concerning the timing of his filing of a claim with the Equal Employment Opportunity Commission ("EEOC"), and therefore denies the same and leaves Plaintiff to his proof.

### PLAINTIFF

**COMPLAINT ¶ 8:** The Plaintiff, Ryan Greene ("Plaintiff"), resides in 11 Tracy Drive Vernon, CT 06066.

**ANSWER:** In answering Paragraph 8 of Plaintiff's Complaint, Amazon states that it is without sufficient knowledge or information to form a belief as to Plaintiff's allegations concerning his current residence, and therefore denies the same and leaves Plaintiff to his proof.

### DEFENDANT

**COMPLAINT ¶ 9:** The Defendant, Amazon.com Services LLC, ("Amazon" or "Defendant"), is located at 71 Horizon Drive, Bristol CT, 06010, where the activities and conduct occurred.

**ANSWER:** In answering Paragraph 9 of Plaintiff's Complaint, Amazon admits only that it maintains a facility located at 71 Horizon Drive, Bristol, Connecticut, 06010, and denies the remaining allegations contained in Paragraph 9 of Plaintiff's Complaint.

### FACTUAL BACKGROUND

**COMPLAINT ¶ 10:** The Defendant employs more than fifteen (15) employees.

**ANSWER:** Amazon admits the allegations in Paragraph 10 of Plaintiff's Complaint.

**COMPLAINT ¶ 11:** Plaintiff is a Caucasian male.

**ANSWER:** Amazon admits the allegations in Paragraph 11 of Plaintiff's Complaint, upon information and belief.

**COMPLAINT ¶ 12:** Plaintiff began working for Amazon as an Area Manager on May 18, 2015.

**ANSWER:** Amazon admits the allegations in Paragraph 12 of Plaintiff's Complaint.

**COMPLAINT ¶ 13:** Plaintiff was promoted to an Operation Manager in March 19, 2018.

**ANSWER:** Amazon admits the allegations in Paragraph 13 of Plaintiff's Complaint.

**COMPLAINT ¶ 14:** Plaintiff was promoted to a Senior Operations Manager in September 2019.

**ANSWER:** Amazon admits the allegations in Paragraph 14 of Plaintiff's Complaint.

**COMPLAINT ¶ 15:** In or about April, 2020, Plaintiff transferred to Amazon Logistics, or Amazon Shipping ("AMZL") (the name used to describe deliveries from Amazon that are delivered by Amazon's own logistical arrangements) as a Regional Senior leader owning the southern Connecticut region.

**ANSWER:** In answering Paragraph 15 of Plaintiff's Complaint, Amazon admits that on April 5, 2020, Plaintiff transferred to Amazon Logistics, where his title was Regional Senior Operations Manager, in which role he oversaw a region of Delivery Stations in Connecticut. Amazon denies the remaining allegations contained in Paragraph 15 of Plaintiff's Complaint.

**COMPLAINT ¶ 16:** In or about April, 2020, Plaintiff was a virtually located manager.

**ANSWER:** Amazon admits the allegations in Paragraph 16 of Plaintiff's Complaint.

**COMPLAINT ¶ 17:** As a virtually located manager, Plaintiff managed four Station Managers, seventy Area Managers and twelve hundred hourly associates.

**ANSWER:** In answering Paragraph 17 of Plaintiff's Complaint, Amazon admits that upon assuming his Regional Senior Operations Manager role, Amazon assigned Plaintiff to oversee the launch and operations at four Delivery Stations. Amazon denies the remaining allegations contained in Paragraph 17 of Plaintiff's Complaint.

**COMPLAINT ¶ 18:** In or about April 2020, Plaintiff's four sites, that he was scheduled to manage, were delayed for opening and he was asked to cover DBL1, a station in northern Connecticut, located at 71 Horizon Drive, Bristol CT, 06010.

**ANSWER:** In answering Paragraph 18 of Plaintiff's Complaint, Amazon admits that Amazon assigned Plaintiff to DBL1 located in Bristol, Connecticut. Amazon denies the remaining allegations contained in Paragraph 18 of Plaintiff's Complaint.

**COMPLAINT ¶ 19:** Plaintiff was asked to cover DBL1 because the station was poor performing and because he was viewed as a top performer.

    **ANSWER:** Amazon denies the allegations in Paragraph 19 of Plaintiff's Complaint.

**COMPLAINT ¶ 20:** Plaintiff was the Senior leader responsible for all metrics and development of the leaders at the Bristol CT station ("DBL1 or the "Bristol CT station").

    **ANSWER:** In answering Paragraph 20 of Plaintiff's Complaint, Amazon admits that Plaintiff was responsible for managing the operations of DBL1. Amazon denies the remaining allegations contained in Paragraph 20 of Plaintiff's Complaint.

**COMPLAINT ¶ 21:** The Bristol CT Operation Manager, a direct report, was Vanessa Ware ("Ware"), Black female, mid thirties.

    **ANSWER:** In answering Paragraph 21 of Plaintiff's Complaint, Amazon admits that as Regional Senior Operations Manager, Plaintiff supervised Operations Manager Vanessa Ware, and admits, upon information and belief, that Ware is Black. Amazon denies the remaining allegations contained in Paragraph 21 of Plaintiff's Complaint.

**COMPLAINT ¶ 22:** Ware was one of four Operation Managers reporting directly to Plaintiff each manager in different locations. Ware was the Bristol site manager.

    **ANSWER:** In answering Paragraph 22 of Plaintiff's Complaint, Amazon admits that that Plaintiff managed multiple Operations Managers, including Ware, and that Ware was the DBL1 site manager. Amazon denies the remaining allegations contained in Paragraph 22 of Plaintiff's Complaint.

**COMPLAINT ¶ 23:** On or about April 30, 2020, Ware and Plaintiff discussed during a monthly one-on-one meeting, which he had, as standard practice with his reports, her individual career goals. Further, as part of his usual process, Ware and Plaintiff created action plans in furtherance of her career goals, discussed key metrics and what Plaintiff could do to help her.

    **ANSWER:** In answering Paragraph 23 of Plaintiff's Complaint, Amazon admits that as Ware's manager, Plaintiff would have been responsible for conducting one-on-one meetings with

Ware. Amazon denies the remaining allegations contained in Paragraph 23 of Plaintiff's Complaint.

**COMPLAINT ¶ 24:** The manager that preceded Plaintiff, Chris Baran (Caucasian), had not done a monthly one-on-one with Ware in over a year, which Plaintiff confirmed in the Amazon online portal, Ingenii, which tracks these meetings.

**ANSWER:** Amazon denies the allegations in Paragraph 24 of Plaintiff's Complaint.

**COMPLAINT ¶ 25:** During the one-on-one session, Plaintiff asked Ware for upward feedback and Ware told him that she was nervous to work with him because he didn't promote her in a previous position at his last site, an Amazon Warehouse ("BDL2"). (Plaintiff and Ware had worked together in the previous location, she was the Area Manager and Plaintiff was the Senior Operations Manager. They worked together there for approximately three years, from 2016 to 2019, but she did not report to him until 2018.) That was the reason she had transferred out of the building and to AMZL, DBL1, a different site and no longer reported to Plaintiff, she explained to the Plaintiff in 2019.

**ANSWER:** In answering Paragraph 25 of Plaintiff's Complaint, Amazon admits that Ware transferred from BDL2 to DBL1. By way of further response, Amazon states that it is without sufficient knowledge or information to form a belief as to the remaining allegations contained in Paragraph 25 of Plaintiff's Complaint, and therefore denies the same and leaves Plaintiff to his proof.

**COMPLAINT ¶ 26:** Prior to Ware's transferring out of BDL2 to DBL1, a previous Sr. Operation Manager and Plaintiff concurred that Ware's performance metrics needed improvement, generally.

**ANSWER:** In answering Paragraph 26 of Plaintiff's Complaint, Amazon states that it is without sufficient knowledge or information to form a belief as the allegations contained in Paragraph 26 of Plaintiff's Complaint, and therefore denies the same and leaves Plaintiff to his proof.

**COMPLAINT ¶ 27:** During the one-on-one session, on or about April 30, 2020, Plaintiff explained that he would help her reach her goals and give her real-time feedback to help her.

**ANSWER:** In answering Paragraph 27 of Plaintiff's Complaint, Amazon admits that as Ware's manager, Plaintiff would have been responsible for conducting one-on-one meetings with

Ware. By way of further response, Amazon states that it is without sufficient knowledge or information to form a belief as to the remaining allegations contained in Paragraph 27 of Plaintiff's Complaint, and therefore denies the same and leaves Plaintiff to his proof.

**COMPLAINT ¶ 28:** On or about April 30, 2020, during the same meeting with Ware, Plaintiff discussed his passion with diversity and inclusion and uncovered that she was passionate about this as well.

**ANSWER:** In answering Paragraph 28 of Plaintiff's Complaint, Amazon states that it is without sufficient knowledge or information to form a belief as to the allegations contained in Paragraph 28 of Plaintiff's Complaint, and therefore denies the same and leaves Plaintiff to his proof.

**COMPLAINT ¶ 29:** Further, at the April 30th meeting, Plaintiff asked Ware if she would like to help him drive affinity groups and she agreed that she would like to help drive BEN, our black employee network affinity group.

**ANSWER:** In answering Paragraph 29 of Plaintiff's Complaint, Amazon states that it is without sufficient knowledge or information to form a belief as to the allegations contained in Paragraph 29 of Plaintiff's Complaint, and therefore denies the same and leaves Plaintiff to his proof.

**COMPLAINT ¶ 30:** At the April 30th meeting, Plaintiff also explained that he would discuss a plan on how to drive BEN with HR and he would get back to her about her assisting him in driving BEN. In the April 30th meeting, Ware was pleased with that plan regarding BEN, and expressed that she was happy to have a manager giving her direct feedback.

**ANSWER:** In answering Paragraph 30 of Plaintiff's Complaint, Amazon states that it is without sufficient knowledge or information to form a belief as to the allegations contained in Paragraph 30 of Plaintiff's Complaint, and therefore denies the same and leaves Plaintiff to his proof.

**COMPLAINT ¶ 31:** As a follow up to his commitment to Ware, made during the April 30th meeting, in or about May 2020, Plaintiff scheduled a meeting with Senior HR manager Allie Voss

("Voss"), Caucasian female, mid thirties, to discuss his passion and interest in Inclusion and Diversity.

> **ANSWER:** In answering Paragraph 31 of Plaintiff's Complaint, Amazon admits that Plaintiff and Regional Human Resources Manager Allison Voss met in May 2020 and that Plaintiff and Voss discussed diversity and inclusion. Amazon denies the remaining allegations contained in Paragraph 31 of Plaintiff's Complaint.

**COMPLAINT ¶ 32:** In the May 2020 meeting, Plaintiff and Voss discussed that he was a Bar Raiser, only 1% of Amazonians are, largely due to his passion for Inclusion and Diversity.

> **ANSWER:** In answering Paragraph 32 of Plaintiff's Complaint, Amazon admits that Plaintiff and Regional Human Resources Manager Allison Voss met in May 2020. Amazon states that it is without sufficient knowledge or information to form a belief as to the remaining allegations contained in Paragraph 32 of Plaintiff's Complaint, and therefore denies the same and leaves Plaintiff to his proof.

**COMPLAINT ¶ 33:** Further, in the May 2020 meeting, Plaintiff and Voss also discussed that he owned rolling out four affinity groups at his past site, BDL2, including BEN our black employee network affinity group.

> **ANSWER:** In answering Paragraph 33 of Plaintiff's Complaint, Amazon admits that Plaintiff and Regional Human Resources Manager Allison Voss met in May 2020. Amazon states that it is without sufficient knowledge or information to form a belief as to the remaining allegations contained in Paragraph 33 of Plaintiff's Complaint, and therefore denies the same and leaves Plaintiff to his proof.

**COMPLAINT ¶ 34:** In the May 2020 meeting, Plaintiff and Voss agreed that when AMZL launches affinity groups he would be Voss's operation partner to help drive and sustain the affinity groups.

> **ANSWER:** In answering Paragraph 34 of Plaintiff's Complaint, Amazon admits that Plaintiff and Regional Human Resources Manager Allison Voss met in May 2020. Amazon states

that it is without sufficient knowledge or information to form a belief as to the remaining allegations contained in Paragraph 34 of Plaintiff's Complaint, and therefore denies the same and leaves Plaintiff to his proof.

**COMPLAINT ¶ 35:** Subsequent to the May 2020 meeting with Voss, Plaintiff emailed the information about the BEN rollout to Ware along with a video from the corporate BEN chapter.

**ANSWER:** In answering Paragraph 35 of Plaintiff's Complaint, Amazon states that the document referenced therein speaks for itself and denies Plaintiff's characterization of the same.

**COMPLAINT ¶ 36:** On or about May 14, 2020, Ware replied back to Plaintiff with her thanks, that she enjoyed the video, and that she is excited to launch BEN at her station.

**ANSWER:** In answering Paragraph 36 of Plaintiff's Complaint, Amazon states that the document referenced therein speaks for itself and denies Plaintiff's characterization of the same.

**COMPLAINT ¶ 37:** On or about June 8, 2020, Plaintiff received a call from Voss, and was told that he was being suspended due to a complaint from a direct report.

**ANSWER:** In answering Paragraph 37 of Plaintiff's Complaint, Amazon admits only that Plaintiff was suspended on June 8, 2020 pending investigation into an employee complaint, and that Voss called Plaintiff to inform him of the suspension. Amazon denies the remaining allegations contained in Paragraph 37 of Plaintiff's Complaint.

**COMPLAINT ¶ 38:** In the June 8, 2020 call, Plaintiff was not given any details and was advised that due to the size of HR, a private investigator would call him with details and ask him questions.

**ANSWER:** In answering Paragraph 38 of Plaintiff's Complaint, Amazon admits only that it investigated the employee complaint, and that Voss called Plaintiff to inform him of the suspension. Amazon denies the remaining allegations contained in Paragraph 38 of Plaintiff's Complaint.

**COMPLAINT ¶ 39:** In the June 8, 2020 call, Plaintiff was told to not communicate with anyone on his team.

**ANSWER:** In answering Paragraph 39 of Plaintiff's Complaint, Amazon admits that Voss called Plaintiff to inform him of the suspension. Amazon denies the remaining allegations contained in Paragraph 39 of Plaintiff's Complaint.

**COMPLAINT ¶ 40:** On or about June 9, 2020, Cochran, (female), whom Plaintiff was told was an [sic] private investigator called Plaintiff. She told him that she would be leading the investigation.

**ANSWER:** In answering Paragraph 40 of Plaintiff's Complaint, Amazon admits only that it investigated the employee complaint against Plaintiff.  Amazon denies the remaining allegations contained in Paragraph 40 of Plaintiff's Complaint.

**COMPLAINT ¶ 41:** On or about June 9, 2020, in the call, Cochran told Plaintiff that she has only been with Amazon for three weeks and would also need to look at policies before making a recommendation to Amazon HR.

**ANSWER:** In answering Paragraph 41 of Plaintiff's Complaint, Amazon admits that Cochran interviewed Plaintiff on or about June 9, 2020, as part of Amazon's investigation into an employee complaint.  Amazon denies the remaining allegations contained in Paragraph 41 of Plaintiff's Complaint.

**COMPLAINT ¶ 42:** On or about June 9, 2020, in the call, Cochran explained that after the investigation she would email Plaintiff and HR would contact him.

**ANSWER:** In answering Paragraph 42 of Plaintiff's Complaint, Amazon admits that Cochran interviewed Plaintiff on or about June 9, 2020, as part of Amazon's investigation into an employee complaint.  Amazon denies the remaining allegations contained in Paragraph 42 of Plaintiff's Complaint.

**COMPLAINT ¶ 43:** During the half an hour call, on or about June 9, 2020, with Cochran, Cochran told Plaintiff that Ware alleged that during his second one-on-one meeting with Ware, which Ware said was on or about June 4, 2020, or June 5, 2020, but that Ware could not remember the date or time, Plaintiff told Ware that she "was sweet and kind, like Aunt Jemima."

**ANSWER:** Amazon denies the allegations in Paragraph 43 of Plaintiff's Complaint.

**COMPLAINT ¶ 44:** Plaintiff explained to the investigator that he absolutely did not say that.

**ANSWER:** In answering Paragraph 44 of Plaintiff's Complaint, Amazon admits that Plaintiff denied comparing Ware to "Aunt Jemima."  Amazon denies remaining the allegations contained in Paragraph 44 of Plaintiff's Complaint.

**COMPLAINT ¶ 45:** In the meeting, in which the alleged comments occurred, Ware and the Plaintiff were both six feet apart due to social distancing guidelines and were wearing face masks.

**ANSWER:** In answering Paragraph 45 of Plaintiff's Complaint, Amazon states that it is without sufficient knowledge or information to form a belief as to the allegations contained in Paragraph 45 of Plaintiff's Complaint, and therefore denies the same and leaves Plaintiff to his proof.

**COMPLAINT ¶ 46:** Plaintiff explained to Cochran that he said to Ware that her managers loved her, they thought she had good qualities, however, her team also reported that she did not hold them accountable, and Plaintiff gave her specific details where she gave direction and her team did not follow it. Plaintiff typed contemporaneous notes into the ingenie system that recounted the meeting in substance without any reference or intimation that he had said Ware was "sweet and kind, like Aunt Jemima."

**ANSWER:** In answering Paragraph 46 of Plaintiff's Complaint, Amazon states that it is without sufficient knowledge or information to form a belief as to the allegations contained in Paragraph 46 of Plaintiff's Complaint, and therefore denies the same and leaves Plaintiff to his proof.

**COMPLAINT ¶ 47:** Plaintiff shared with Cochran that Ware had stated that she appreciated the direct feedback that she received at the second meeting, and that she needed to work on giving direct feedback to her direct reports and having them follow it.

**ANSWER:** Amazon denies the allegations in Paragraph 47 of Plaintiff's Complaint.

**COMPLAINT ¶ 48:** On or about June 9, 2020, in the call with Plaintiff, Cochran told Plaintiff that there was a second complaint by Ware. The second complaint was that during a one-on-one, Plaintiff had advised Ware that there was a new manager, Mario (Spanish, male, thirty), starting, who would be taking her spot in Bristol, as she transitioned to her new station in Wallingford, and that Plaintiff and she should do their best to make sure the Bristol station is running as smoothly as possible. Ware had been scheduled to transfer to Wallingford, a region Plaintiff did not manage,

in April, but because of Covid, the transfer had been delayed to August 2020. Ware alleged that Plaintiff's comment that they wanted the hand off to go smoothly made it seem like she was a servant.

      **ANSWER:** Amazon denies the allegations in Paragraph 48 of Plaintiff's Complaint.

**COMPLAINT ¶ 49:** Plaintiff's instruction that they wanted a smooth hand-off was standard practice. Plaintiff explained to the investigator that Ware and he had discussed the areas that need to be prepared, this included many areas of opportunity in regards to quality, bridging, social distancing, and that we have to improve and ensure the station would be efficient with a new manager.

      **ANSWER:** Amazon denies the allegations in Paragraph 49 of Plaintiff's Complaint.

**COMPLAINT ¶ 50:** On or about June 9, 2020, in the call, Plaintiff explained to the investigator, Cochran, that Plaintiff had asked her what support she needed, and that he conducted one-on-ones with every one of his and Ware's direct managers (eight) to give feedback and help create action plans to help improve the station. (Linda White, forty, Black female; Edmund Grant, thirty, Caucasian, male; Ware, Black, mid thirties, female; Reggie Antonie, Black male, mid twenties; Bianca Cruz, Caucasian, female, mid thirties; Marissa Trinkley, female, Caucasian, mid twenties; Nick C, male, mid twenties; Melissa B, Caucasian, female mid twenties. Jared Prims, Caucasian, male early thirties).

      **ANSWER:** Amazon denies the allegations in Paragraph 50 of Plaintiff's Complaint.

**COMPLAINT ¶ 51:** On or about June 9, 2020, in the call, Plaintiff explained to the investigator that he was given positive feedback from Ware and her team, as they hadn't had a one-on-one before from other managers and found them to be useful.

      **ANSWER:** Amazon denies the allegations in Paragraph 51 of Plaintiff's Complaint.

**COMPLAINT ¶ 52:** On or about June 9, 2020, in the call, Plaintiff explained that the conversation with Ware was constructive and that they had agreed on actions, manager moves, and direction together.

      **ANSWER:** Amazon denies the allegations in Paragraph 52 of Plaintiff's Complaint.

**COMPLAINT ¶ 53:** On or about June 9, 2020, in the call, Plaintiff explained to the investigator that he was passionate about inclusion and diversity, that he had previously rolled out affinity groups from his past site (BDL2) and would never call anyone Aunt Jemima and that he had never used any racial slurs or negative racial connotations in his life or previous work situations.

      **ANSWER:** Amazon denies the allegations in Paragraph 53 of Plaintiff's Complaint.

**COMPLAINT ¶ 54:** Plaintiff gave the investigator the name of another Black female, forty, Linda White ("White"), a female manager that directly reported to him, whom he mentored (as part of a

formal internal program), and explained that he and Ms. White partnered and drove together the Black Women Leaders of Amazon (BWLA). He gave the name to the investigator to confirm and affirm that he would not use that kind of language based on that she knew him in his role as a sensitive white male to the role of black females in Amazon's ecosystem.

**ANSWER:** In answering Paragraph 54 of Plaintiff's Complaint, Amazon admits that

Plaintiff directly managed Linda White, who, upon information and belief, is Black. Amazon

denies the remaining allegations contained in Paragraph 54 of Plaintiff's Complaint.

**COMPLAINT ¶ 55:** Ms. White related to Plaintiff that she was never called by the investigator. Ms. White called him multiple times during the investigation, asking when he would be back.

**ANSWER:** In answering Paragraph 55 of Plaintiff's Complaint, Amazon states that it is

without sufficient knowledge or information to form a belief as to the allegations contained in

Paragraph 55 of Plaintiff's Complaint concerning a private conversation he had with a non-party,

and therefore denies the same and leaves Plaintiff to his proof.

**COMPLAINT ¶ 56:** On or about June 9, 2020, as part of his input into the investigation, Plaintiff explained that Ware told him, during the April 30th one-on-one that she was "nervous" to work with him, because he had not promoted her, and that that was the reason she had transferred out of our previous site (BDL2). He was critical of her performance in the previous relationship and she had transferred out to get away from him and she was quite concerned that her performance would not satisfy him again.

**ANSWER:** In answering Paragraph 56 of Plaintiff's Complaint, Amazon states that it is

without sufficient knowledge or information to form a belief as to the allegations contained in

Paragraph 56 of Plaintiff's Complaint, and therefore denies the same and leaves Plaintiff to his

proof.

**COMPLAINT ¶ 57:** On or about June 9, 2020, Plaintiff told the investigator that Plaintiff was documenting Ware's performance and opportunities to help track progress and glide path to their goals, and that this was something that Ware was aware was being done. Ware, it was clear to Plaintiff, was concerned about being documented (being documented is a coaching approach which indicates need for improvement).

**ANSWER:** In answering Paragraph 57 of Plaintiff's Complaint, Amazon admits that Plaintiff told Cochran about Plaintiff's impressions of Ware's performance. Amazon denies the remaining allegations contained in Paragraph 57 of Plaintiff's Complaint.

**COMPLAINT ¶ 58:** Plaintiff explained that himself and Sahni Abhishek (Indian), Ware's previous Senior Operational Manager, had a conversation in 2019, with her on her performance and what she could do to improve to reach her goals and eventually be promoted.

**ANSWER:** In answering Paragraph 58 of Plaintiff's Complaint, Amazon admits that Plaintiff told Cochran about his subjective perception of Abhishek Sahni's impressions of Ware's performance. Amazon denies the remaining allegations contained in Paragraph 58 of Plaintiff's Complaint.

**COMPLAINT ¶ 59:** Ware had transferred one month after that conversation.

**ANSWER:** In answering Paragraph 59 of Plaintiff's Complaint, Amazon admits that Ware transferred roles within Amazon. Amazon denies the remaining allegations contained in Paragraph 59 of Plaintiff's Complaint.

**COMPLAINT ¶ 60:** Plaintiff also explained to the investigator that his one-on-ones were documented and occurred on April 30 and June 2nd, not June 4, or June 5. (The investigator told Plaintiff that Ware was unsure of the dates of the one-on-one in which the alleged acts occurred but thought it was on either June 4 or June 5).

**ANSWER:** In answering Paragraph 60 of Plaintiff's Complaint, Amazon admits only that Plaintiff disputed the dates of his meetings with Ware. Amazon denies the remaining allegations contained in Paragraph 60 of Plaintiff's Complaint.

**COMPLAINT ¶ 61:** On June 26, 2020, Plaintiff was called by his direct manager, Jean Barberi ("Barberi") (his manager since March 2020, whom he had never met in person) (Asian) and Voss and was terminated.

**ANSWER:** In answering Paragraph 61 of Plaintiff's Complaint, Amazon admits only that Plaintiff's employment was terminated on June 26, 2020. Amazon denies the remaining allegations contained in Paragraph 61 of Plaintiff's Complaint.

**COMPLAINT ¶ 62:** Plaintiff was never contacted by the investigator when the investigation was complete so he could address any issues that may have arisen or were of concern in order to provide further information or clarification, as he was stated would happen as part of the investigative procedure.

**ANSWER:** Amazon denies the allegations in Paragraph 62 of Plaintiff's Complaint.

**COMPLAINT ¶ 63:** The investigation was shoddy, incomplete, and reflected implicit bias against the Plaintiff, including a single thirty-minute call with the Plaintiff at the beginning of the three-week investigation.

**ANSWER:** Amazon denies the allegations in Paragraph 63 of Plaintiff's Complaint.

**COMPLAINT ¶ 64:** Neither Plaintiff's manager Barberi nor Voss asked Plaintiff any questions on what happened during this termination call, nor was he contacted at all by them during the investigation.

**ANSWER:** Amazon denies the allegations in Paragraph 64 of Plaintiff's Complaint.

**COMPLAINT ¶ 65:** Plaintiff believes that Amazon discriminatorily disciplined him as a Caucasian male, in favor of a story with false allegations by a Black female, who was dissatisfied with not being promoted and had concerns about having her current performance documented as per policy.

**ANSWER:** In answering Paragraph 65 of Plaintiff's Complaint, Amazon states that it is without sufficient knowledge or information to form a belief as to Plaintiff's subjective beliefs, and therefore denies the same and leaves Plaintiff to his proof.  Amazon denies the remaining allegations contained in Paragraph 65 of Plaintiff's Complaint.

**COMPLAINT ¶ 66:** The alleged comments happened during closed door one-on-ones without any witnesses.

**ANSWER:** In answering Paragraph 66 of Plaintiff's Complaint, Amazon admits that no other employees were present for the meeting between Plaintiff and Ware, after which she alleged that he made sexually and racially inappropriate comments. Amazon denies the remaining allegations contained in Paragraph 66 of Plaintiff's Complaint.

**COMPLAINT ¶ 67:** Plaintiff didn't say the comment alleged and the evidence shows that he was performing his responsibilities in accordance expected and accepted Amazon procedures.

**ANSWER:** Amazon denies the allegations in Paragraph 67 of Plaintiff's Complaint.

**COMPLAINT ¶ 68:** Plaintiff has the correct dates of the one-on-ones documented.

**ANSWER:** In answering Paragraph 68 of Plaintiff's Complaint, Amazon admits that Plaintiff disputed the dates of his meetings with Ware. Amazon denies the remaining allegations contained in Paragraph 68 of Plaintiff's Complaint.

**COMPLAINT ¶ 69:** The documentation was uploaded into a portal for recordkeeping and will support his position that he acted as was required of a manager in his position.

**ANSWER:** Amazon denies the allegations in Paragraph 69 of Plaintiff's Complaint.

**COMPLAINT ¶ 70:** One-on-ones occurred during closed-door meetings with Ware and himself on April 30th and June 2nd though the meetings were videotaped (without audio).

**ANSWER:** In answering Paragraph 70 of Plaintiff's Complaint, Amazon admits that Plaintiff disputed the dates of his meetings with Ware. Amazon denies the remaining allegations contained in Paragraph 70 of Plaintiff's Complaint.

**COMPLAINT ¶ 71:** Ware alleged the one-on-ones happened on June 4, 2020 or June 5, 2020, days plaintiff worked from home.

**ANSWER:** In answering Paragraph 71 of Plaintiff's Complaint, Amazon admits that Plaintiff disputed the dates of his meetings with Ware. Amazon denies the remaining allegations contained in Paragraph 71 of Plaintiff's Complaint.

**COMPLAINT ¶ 72:** On both June 4, 2020 and June 5, 2020, Plaintiff has messages from Ware documented, where she states "awesome, thank you" to him as he was working from home and they communicated only over Amazon Chime.

**ANSWER:** Amazon denies the allegations in Paragraph 72 of Plaintiff's Complaint.

**COMPLAINT ¶ 73:** On June 2, 2020, Plaintiff had sent Ware their one-on-one conversation as well as a list of past due action items and misses that she needed to improve.

**ANSWER:** In answering Paragraph 73 of Plaintiff's Complaint, Amazon states that it is without sufficient knowledge or information to form a belief as the allegations contained in

Paragraph 73 of Plaintiff's Complaint, and therefore denies the same and leaves Plaintiff to his proof.

**COMPLAINT ¶ 74:** Ware replied with an action plan.

**ANSWER:** In answering Paragraph 74 of Plaintiff's Complaint, Amazon states that it is without sufficient knowledge or information to form a belief as the allegations contained in Paragraph 74 of Plaintiff's Complaint, and therefore denies the same and leaves Plaintiff to his proof.

**COMPLAINT ¶ 75:** On June 2, 2020, Ware messaged that she is so excited and sent a picture that she was chosen to help drive BEN, our black employee network.

**ANSWER:** In answering Paragraph 75 of Plaintiff's Complaint, Amazon states that it is without sufficient knowledge or information to form a belief as the allegations contained in Paragraph 75 of Plaintiff's Complaint, and therefore denies the same and leaves Plaintiff to his proof.

**COMPLAINT ¶ 76:** This is after their second one-on-one referred to previously

**ANSWER:** Amazon denies the allegations in Paragraph 76 of Plaintiff's Complaint.

**COMPLAINT ¶ 77:** On June 3, 2020, Plaintiff sent another follow up email to Ware and asked for a response with her plan to address so he could give feedback upstream as to why they missed.

**ANSWER:** In answering Paragraph 77 of Plaintiff's Complaint, Amazon states that the document referenced therein speaks for itself, and Amazon denies Plaintiff's characterization of the same.

**COMPLAINT ¶ 78:** Ware replied with an action plan.

**ANSWER:** In answering Paragraph 78 of Plaintiff's Complaint, Amazon states that the document referenced therein speaks for itself, and Amazon denies Plaintiff's characterization of the same.

**COMPLAINT ¶ 79:** On June 4, 2020, Plaintiff again emailed Ware a list of open action items that were past due as well as a need for details as to what happened.

**ANSWER:** In answering Paragraph 79 of Plaintiff's Complaint, Amazon states that the document referenced therein speaks for itself, and Amazon denies Plaintiff's characterization of the same.

**COMPLAINT ¶ 80:** Ware replied back to the email and stated that it was a big miss and blamed this on Jared Prims (Area Manager, Caucasian, male early thirties), one of her staff.

**ANSWER:** In answering Paragraph 80 of Plaintiff's Complaint, Amazon states that the document referenced therein speaks for itself, and Amazon denies Plaintiff's characterization of the same.

**COMPLAINT ¶ 81:** On or about June 5, 2020, Ware had a problem with one of her Area Managers. Ware explained in an email message she sent him that the Area manager, Marissa Trinkley, female, Caucasian, mid twenties, Ware's direct report, was going to be taking a week off due to a conversation that Ware had had with her. Trinkley was upset about the conversation that Ware had had with her. Ware had taken Plaintiff's guidance given to her, on June 2, 2020, which was to hold her team accountable, but instead of properly holding Trinkley accountable, as they had discussed, she had instead threatened Trinkley with termination over a medical issue.

**ANSWER:** In answering Paragraph 81 of Plaintiff's Complaint, Amazon states that the document referenced therein speaks for itself, and Amazon denies Plaintiff's characterization of the same.

**COMPLAINT ¶ 82:** Ware was worried about coverage and who would cover the shift and explained that she would just get an excuse if she asked another manager to cover.

**ANSWER:** In answering Paragraph 82 of Plaintiff's Complaint, Amazon states that it is without sufficient knowledge or information to form a belief as the allegations contained in Paragraph 82 of Plaintiff's Complaint, and therefore denies the same and leaves Plaintiff to his proof.

**COMPLAINT ¶ 83:** Plaintiff asked Ware to let him know if she needed help with coverage to cover for Trinkley and to keep him updated.

**ANSWER:** In answering Paragraph 83 of Plaintiff's Complaint, Amazon states that the document referenced therein speaks for itself, and Amazon denies Plaintiff's characterization of the same.

**COMPLAINT ¶ 84:** Ware replied back "okay."

**ANSWER:** In answering Paragraph 84 of Plaintiff's Complaint, Amazon states that the document referenced therein speaks for itself, and Amazon denies Plaintiff's characterization of the same.

**COMPLAINT ¶ 85:** The claim, by Ware, of a racist comment, alleged against Plaintiff, came immediately after he held her accountable and her performance problem with Trinkley were at risk of being documented (a disciplinary step). The Defendant falsely and intentionally found the comments to be true against Plaintiff in the absence of any evidence, based in large part on a prior unrelated incident.

**ANSWER:** Amazon denies the allegations in Paragraph 85 of Plaintiff's Complaint.

**COMPLAINT ¶ 86:** Plaintiff has all one-on-ones documented and messages saved.

**ANSWER:** In answering Paragraph 86 of Plaintiff's Complaint, Amazon states that it is without sufficient knowledge or information to form a belief as the allegations contained in Paragraph 86 of Plaintiff's Complaint, and therefore denies the same and leaves Plaintiff to his proof.

**COMPLAINT ¶ 87:** Plaintiff therefore charges Amazon with unfairly and wrongfully terminating him.

**ANSWER:** Amazon denies the allegations in Paragraph 87 of Plaintiff's Complaint.

**COMPLAINT ¶ 88:** The dates of the alleged comments were not correct, both parties were wearing face masks and were alone and behind closed doors, though video recorded.

**ANSWER:** Amazon denies the allegations in Paragraph 88 of Plaintiff's Complaint.

**COMPLAINT ¶ 89:** Plaintiff has conducted hundreds of one-on-ones in his career with Amazon and has never previously been made aware of a subordinates complaint with regard to his coaching or his professionalism.

**ANSWER:** Amazon denies the allegations in Paragraph 89 of Plaintiff's Complaint.

**COMPLAINT ¶ 90:** Amazon has requested the Plaintiff pay back $15,500 from a bonus (a relocation bonus requiring one year of employment post the bonus), as well as took away over $180,000 of Amazon stock that he was awarded and scheduled to vest soon after his termination.

**ANSWER:** In answering Paragraph 90 of Plaintiff's Complaint, Amazon respectfully refers to the counterclaim asserted herein for a complete and accurate statement of its contents. Amazon denies the remaining allegations contained in Paragraph 90 of Plaintiff's Complaint.

**COMPLAINT ¶ 91:** Plaintiff has suffered severe and extreme emotional distress

**ANSWER:** Amazon denies the allegations in Paragraph 91 of Plaintiff's Complaint.

**COUNT ONE**
**VIOLATION OF TITLE VII**
**REVERSE DISCRIMINATION, HOSTILE WORK ENVIRONMENT,**
**AND RETALIATION BASED ON RACE**

**COMPLAINT ¶¶ 1-93:** The Plaintiff hereby re-alleges and reincorporates paragraphs 1-93 as if more fully set forth herein.

**ANSWER:** Amazon repeats and realleges its responses to Paragraphs 1-91 of Plaintiff's Complaint as if fully asserted herein in response to Paragraph "1-93" of Plaintiff's Complaint.

**COMPLAINT ¶ 92:** The Plaintiff, a Caucasian male, is the subject of reverse discrimination.

**ANSWER:** In answering Paragraph 92 of Plaintiff's Complaint, Amazon admits, upon information and belief, that Plaintiff is Caucasian and male. Amazon denies the remaining allegations contained in Paragraph 92 of Plaintiff's Complaint.

**COMPLAINT ¶ 93:** The Plaintiff was qualified for his position.

**ANSWER:** Amazon denies the allegations in Paragraph 93 of Plaintiff's Complaint.

**COMPLAINT ¶ 94:** Plaintiff has been treated disparately, based upon his race, including, but not limited to the following:
(a) Plaintiff was falsely accused of making a racist comment.
(b) Plaintiff was falsely accused of making a demeaning comment
by offering assistance to Ware in furtherance of ensuring the transfer
of the Bristol location went smoothly.

(c) Plaintiff was terminated on account of false accusations made against him.

(d) Defendant took the allegations against him as being true, siding with a Black employee whose performance was being questioned at the very time of the allegations, and previous to the allegations.

**ANSWER:** Amazon denies the allegations in Paragraph 94 of Plaintiff's Complaint, including the allegations in each subpart.

**COMPLAINT ¶ 95:** These discriminatory, adverse employment actions were taken because the Plaintiff was Caucasian and the complainant was Black.

**ANSWER:** Amazon denies the allegations in Paragraph 95 of Plaintiff's Complaint.

**COMPLAINT ¶ 96:** As such, Defendant's actions and conduct are a violation of Title VII.

**ANSWER:** Amazon denies the allegations in Paragraph 96 of Plaintiff's Complaint.

**COMPLAINT ¶ 97:** As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

**ANSWER:** Amazon denies the allegations in Paragraph 97 of Plaintiff's Complaint.

**COMPLAINT ¶ 98:** Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

**ANSWER:** Amazon denies the allegations in Paragraph 98 of Plaintiff's Complaint.

## COUNT TWO
## VIOLATION OF C.G.S. §46A-60b
## REVERSE DISCRIMINATION, HOSTILE WORK ENVIRONMENT
## AND RETALIATION BASED UPON RACE

**COMPLAINT ¶¶ 1-100:** The Plaintiff hereby re-alleges and reincorporates paragraphs 1-100, as if more fully set forth herein.

**ANSWER:** Amazon repeats and realleges its responses to Paragraphs 1-98 of Plaintiff's Complaint as if fully asserted herein in response to Paragraphs "1-100" of Plaintiff's Complaint.

**COMPLAINT ¶ 99:** Defendant's actions are a violation of C.G.S. §46a-60b.

**ANSWER:** Amazon denies the allegations in Paragraph 99 of Plaintiff's Complaint.

**COMPLAINT ¶ 100:** As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

**ANSWER:** Amazon denies the allegations in Paragraph 100 of Plaintiff's Complaint.

**COMPLAINT ¶ 101:** Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

**ANSWER:** Amazon denies the allegations in Paragraph 101 of Plaintiff's Complaint.

**COUNT THREE**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**COMPLAINT ¶¶ 1-106:** The Plaintiff hereby re-alleges and reincorporates paragraphs 1-76 [sic], as if more fully set forth herein.

**ANSWER:** Amazon repeats and realleges its responses to Paragraphs 1-101 of Plaintiff's

Complaint as if fully asserted herein in response to Paragraph "1-106" of Plaintiff's Complaint.

**COMPLAINT ¶ 102:** Defendant intended to inflict emotional distress upon the Plaintiff or knew or reasonably should have known that emotional distress was a likely result of their conduct.

**ANSWER:** Amazon denies the allegations in Paragraph 102 of Plaintiff's Complaint.

**COMPLAINT ¶ 103:** As a result of the foregoing intentional infliction of emotional distress, the Plaintiff has suffered and will continue to suffer severe emotional distress.

**ANSWER:** Amazon denies the allegations in Paragraph 103 of Plaintiff's Complaint.

**COMPLAINT ¶ 104:** Plaintiff seeks damages as a result of the Defendant's unlawful conduct

**ANSWER:** Amazon denies the allegations in Paragraph 104 of Plaintiff's Complaint.

**PRAYER FOR RELIEF**

Amazon denies that Plaintiff is entitled to relief of any kind, including any of the relief

sought against Amazon in the "Wherefore" clause of Plaintiff's Complaint.  To the extent the

allegations set forth in the "Wherefore" clause of Plaintiff's Complaint require a response, Amazon

denies each such allegation.

## GENERAL DENIAL

Amazon denies each and every allegation in Plaintiff's Complaint not specifically admitted herein.

## DEFENSES

Amazon has not completed its investigation of the facts of this case, has not completed discovery in this matter, and has not completed its preparation for trial. The defenses stated herein are based on Amazon's knowledge, information, and belief at this time, and Amazon specifically reserves the right to modify, amend, or supplement any defense contained herein at any time. Without conceding that Amazon bears the burden of proof or persuasion as to any one of them, Amazon asserts the following separate defenses to Plaintiff's Complaint:

## FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted against Amazon.

## SECOND DEFENSE

The Complaint is barred in whole or in part by Plaintiff's own conduct, actions, and inactions, which amount to and constitute an estoppel of any relief sought thereby.

## THIRD DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands and/or inequitable or wrongful conduct.

## FOURTH DEFENSE

To the extent that Plaintiff suffered any injuries, which Amazon denies, Plaintiff failed to minimize or mitigate any damages.

## FIFTH DEFENSE

Plaintiff's claims are barred to the extent Plaintiff failed to comply with and/or violated

23

any relevant or applicable policies, procedures, rules, standards, or expectations of Amazon.

## SIXTH DEFENSE

Plaintiff's claims fail because Amazon's actions were at all times taken in compliance with and/or as required by the laws of the United States and/or of the states which regulate them, and taken in good faith and with reasonable grounds for believing that any alleged acts and omissions were not in violation of the law.

## SEVENTH DEFENSE

To the extent any of Amazon's alleged actions or omissions were unlawful, which Amazon expressly denies, no such actions or omissions constitute a willful violation, but rather were done in good faith, based on a reasonable belief that any such actions or omissions were in conformity with the law, and in reliance on the law.

## EIGHTH DEFENSE

Plaintiff was not subjected to discrimination or retaliation and no condition of Plaintiff's employment was altered because of any alleged discrimination or retaliation.

## NINTH DEFENSE

Plaintiff was treated no differently than similarly-situated employees outside of Plaintiff's purported protected class.

## TENTH DEFENSE

Any claim for punitive damages is barred because at all relevant times Amazon made a good faith effort to comply with all applicable statutes and laws and acted without malice, willfulness, or evil intent.

## ELEVENTH DEFENSE

An award of punitive damages under the circumstances of this case would be an excessive fine and otherwise would be in violation of Amazon's due process and other rights under the United States Constitution and the laws of the State of Connecticut.

## TWELFTH DEFENSE

Plaintiff's claims are frivolous, unreasonable, and groundless and, accordingly, Amazon is entitled to recover all costs and attorneys' fees incurred.

## THIRTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent such claims have been waived, discharged, abandoned, and/or released.

## FOURTEENTH DEFENSE

Plaintiff has sustained no damages or, if any, *de minimus* damages.

## FIFTEENTH DEFENSE

Amazon acted at all times in good faith and consistently maintained, implemented, and enforced its policy in the workplace against discrimination, harassment, and retaliation and otherwise exercised reasonable care to prevent and address promptly any claims of discrimination and/or harassment, and Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by Amazon or to otherwise avoid harm.

## SIXTEENTH DEFENSE

To the extent applicable, Amazon has established, implemented, and complied with policies, programs, and procedures for the prevention and detection of unlawful discriminatory practices in accordance with all applicable laws.

## SEVENTEENTH DEFENSE

Although Amazon denies any wrongdoing, if any improper, illegal, or discriminatory acts were taken by any of Amazon's employees against Plaintiff, such acts were outside the course and scope of that employee's employment, contrary to Amazon's policies, and not ratified, confirmed, or approved by Amazon.  Thus, any such actions were independent, intervening, and unforeseeable acts that cannot be attributed or imputed to Amazon.

## EIGHTEENTH DEFENSE

Plaintiff's claims are barred in that Amazon's actions were a just and proper exercise of management discretion and business judgment that were undertaken for a fair and honest reason regulated by good faith under the circumstances then existing.

## NINETEENTH DEFENSE

The Complaint is limited or subject to an absolute bar as to recoverable damages based on after-acquired evidence that Amazon has presently and/or may acquire during the course of this litigation.

## TWENTIETH DEFENSE

Plaintiff's claims are barred in whole or in part because Plaintiff was an at-will employee, Plaintiff's employment was not governed by an oral, written, or implied contract, and therefore could be terminated with or without notice and with or without cause at any time.

## TWENTY-SECOND DEFENSE

Insofar as Plaintiff seeks recovery for alleged physical and/or emotional injury, which Amazon denies, some or all of such injuries are due to personal circumstances existing in Plaintiff's life during the relevant time or to pre-existing conditions, not to any actions of Amazon.

## TWENTY-THIRD DEFENSE

Plaintiff's Complaint fails to state facts sufficient to grant an award of attorneys' fees and/or costs.

## TWENTY-FOURTH DEFENSE

Plaintiff's claims are barred in whole or in part to the extent that Plaintiff failed to exhaust Plaintiff's administrative remedies and/or failed to satisfy administrative requirements for any of Plaintiff's claim.

## TWENTY-FIFTH DEFENSE

Although Amazon denies any wrongdoing, if Plaintiff can somehow establish a discriminatory motive that was a factor in any action taken against Plaintiff, Amazon reserves the right to rely on the mixed-motive defense, if applicable.

## TWENTY-SIXTH DEFENSE

Plaintiff's claims are barred or limited, in whole or in part, by the applicable statute(s) of limitations.

## TWENTY-SEVENTH DEFENSE

The Complaint, including the averment of damages purportedly stated therein, is barred in whole or in part by the doctrine of laches.

## RESERVATION OF RIGHTS

Amazon reserves the right to assert such additional defenses that may appear and prove applicable during the course of this litigation.

**WHEREFORE**, as to the Answer, Amazon respectfully requests that the Court:

1. Enter judgment in favor of Amazon and against Plaintiff on all causes of action in Plaintiff's Complaint;

2.  Award Amazon its costs and attorneys' fees pursuant to applicable law; and

3.  Award Amazon such other and further relief as it deems just and proper.

### AMAZON'S COUNTERCLAIM AGAINST RYAN GREENE

Pursuant to Federal Rule of Civil Procedure 13, Defendant and Counterclaim-Plaintiff Amazon.com Services LLC ("Amazon") asserts the following Counterclaim arising out of the same transactions and occurrences as the Complaint filed by Plaintiff and Counterclaim-Defendant Ryan Greene ("Greene") and states as follows:

### THE PARTIES

1.  Amazon.com Services LLC is a limited liability company. Its sole member is Amazon.com Sales, Inc., which is a wholly-owned subsidiary of Amazon.com, Inc. Amazon.com, Inc., is a Delaware corporation with a principal place of business in Washington.

2.  Greene is an adult individual, who upon information and belief resides at 71 Tracy Drive, Vernon, Connecticut, 06066. *See* Complaint ¶ 3.

### JURISDICTION AND VENUE

3.  This Court has supplemental jurisdiction over the Counterclaim under 28 U.S.C. § 1367(a) because the Counterclaim forms part of the same case or controversy as the claims within the Court's original jurisdiction.

4.  Venue is proper in the United States District Court for the District of Connecticut pursuant to 28 U.S.C. §§ 1391 because Defendant resides in this judicial district and a substantial part of the alleged events or omissions giving rise to Defendant's Counterclaim occurred in this judicial district.

## FACTUAL ALLEGATIONS

5.      Amazon hired Green on May 18, 2015 as an Area Manager at its "BDL2" Fulfillment Center located in Windsor, Connecticut.[2]

6.      On March 19, 2018, Amazon promoted Greene to Operations Manager.

7.      On September 1, 2019, Amazon promoted Greene to Senior Operations Manager.

8.      On March 10, 2020, Amazon offered Greene an internal transfer to the position of Regional Senior Operations Manager, Delivery, for Amazon Logistics. *See* Offer Letter, dated March 10, 2020, attached hereto as Exhibit A.

9.      Green accepted the offer, and on April 5, 2020, Greene transferred from his position at BDL2 to the role of Regional Senior Operations Manager.

10.     The Offer Letter provided, in relevant part, that Greene was eligible for "Relocation Benefits."

11.     Amazon provides Relocation Benefits to assist employees with expenses associated with moving or changing positions within the company.

12.     Although Relocation Benefits are paid at the time of hire or promotion, they are not immediately earned.

13.     Instead, Relocation Benefits are treated as an advance. As a result, the benefits are not fully earned by the employee until after a specific amount of time following the employee's receipt of those benefits.

14.     Relocation Benefits are earned on a proportional daily basis.

---

[2] Originally, Amazon referred to this Fulfillment Center as "BDL1," but in July 2017 it was renamed to "BDL2."

15.     If employees do not continue their employment with Amazon following their receipt of Relocation Benefits, they must immediately repay any unearned portions of the Relocation Benefits to Amazon.

16.     Amazon employees are not entitled to Relocation Benefits unless they have agreed that repayment may be required if their employment with Amazon is terminated for any reason during the specified period.

17.     Greene's Offer Letter provided specific details regarding his new position, his salary, and the Relocation Benefits associated with his position. *See* Exhibit A.

18.     Under Greene's Offer Letter:

> Relocation benefits paid to you or expenses incurred on your behalf **will be treated as an advance and will be earned on a prorated daily basis as you complete two full years of employment with the Company**. If your employment with the Company is terminated for any reason prior to the second anniversary of your Start Date, **you will be required to repay any unearned portion of the amounts paid to you** or incurred on your behalf to the Company.

> *See* Exhibit A (emphasis added).

19.     Greene accepted the position of Regional Senior Operations Manager and the terms of the Offer Letter.

20.     On April 5, 2020, in reliance on Greene's acceptance of the Offer Letter, Amazon paid Greene a total of $27,619.95 in Relocation Benefits. *See* Employee Repayment Obligation Workbook, attached hereto as Exhibit B.

21.     Greene's employment was terminated on June 26, 2020.

22.     Under the terms of the Relocation Benefits, Greene's benefits were paid as an advance and would be earned on a prorated daily basis as he completed two full years of employment with Amazon following his promotion.

23.     Greene worked 82 days in his Regional Senior Operations Manager role before the termination of his employment.

24.     To fully earn the Relocation Benefits, Greene would have been required to work at Amazon for two full years following his promotion, until April 5, 2022. *See* Exhibit B.

25.     Thereafter, on July 2, 2020, Amazon sent Greene a letter informing him of his outstanding debt to the company and repayment obligation. *See* Letter to Greene, dated July 2, 2020, attached hereto as Exhibit C.

26.     The letter included a copy of the Employee Repayment Obligation Workbook. *See* Exhibit B.

27.     Greene was required to repay the net unearned portion of his Relocation Benefits, a total of $15,510.27, by July 26, 2020. *See* Exhibit B.

28.     To date, Greene has not repaid Amazon for any amount of the unearned Relocation Benefits.

## COUNT I
## BREACH OF CONTRACT

29.     Amazon incorporates by reference its preliminary statement and Paragraphs 1-28 of its Counterclaim.

30.     The Offer Letter is a valid contract between Amazon and Greene.

31.     Amazon paid Greene $27,619.95 in Relocation Benefits.

32.     Because he was terminated from his position at Amazon 82 days after his promotion, $15,510.27 of his Relocation Benefits are unearned and must be repaid.

33.     By failing to repay the unearned portion of the Relocation Benefits, Greene has breached the terms of the Offer Letter.

34.     Amazon has suffered damages as a result of Greene's breach.

31

**WHEREFORE**, as to the Counterclaim, Amazon respectfully requests that the Court:

1.      Enter judgment in favor of Amazon and against Greene for the Counterclaim; and

2.      Award Amazon any other declaratory, equitable, or monetary relief that the Court

deems appropriate or just.

Respectfully submitted,

**AMAZON.COM SERVICES LLC,**

By its attorneys,

**MORGAN, LEWIS & BOCKIUS LLP**

*/s/ Douglas T. Schwarz*
Douglas T. Schwarz*
Gabriel S. Gladstone*
One Federal Street
Boston, MA 02110
Telephone: 617.341.7782
Fax: 617.341.7701
douglas.schwarz@morganlewis.com
gabriel.gladstone@morganlewis.com

Christopher M. Wasil (ct28578)
One State Street
Hartford, CT 06103-3178
Telephone:  860.240.2719
Fax:  860.240.2800
michael.blanchard@morganlewis.com
christopher.wasil@morganlewis.com

*Attorneys for Amazon*

*Admitted Pro Hac Vice

Dated:  November 4, 2021

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, November 4, 2021, a copy of the foregoing was filed electronically and served upon all counsel of record via operation of the Court's CM/ECF System or by mail upon anyone unable to accept electronic filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Douglas T. Schwarz*
Douglas T. Schwarz
